**Vincent M. ROTOLO, Acting Regional Director of the Twenty-Fourth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNITED MARINE DIVISION, NATIONAL MARITIME UNION, LOCAL 333, AFL-CIO, and International Longshoremen's Association, Local 1575, District Council of the Ports of Porto Rico, ILA, AFL-CIO, Respondents.**

Civ. No. 468-63.

United States District Court
D. Puerto Rico.

Jan. 13, 1964.

348

Vincent M. Rotolo, N.L.R.B., Santurce, P. R., for plaintiff.

Roberto J. Matos, San Juan, P. R., for defendant.

JULIAN, District Judge.

This cause came on to be heard upon the verified petition of Vincent M. Rotolo, Acting Regional Director of the Twenty-Fourth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondents filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on November 29, 1963. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issue, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

Findings of Fact

1. Petitioner is Acting Regional Director of the Twenty-Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. (a) On or about November 14, 1963, Sea-Land Service, Inc. (herein called Sea-Land), pursuant to the provisions of the Act, filed a charge with the Board alleging, *inter alia*, that United Marine Division, National Maritime Union, Local 333, AFL–CIO (herein called Local 333), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) (ii), subparagraph (B) of the Act.

(b) On or about November 18, 1963, Sea-Land, pursuant to the provisions of the Act, filed a charge with the Board alleging, *inter alia*, that International Longshoremen's Association, Local 1575, District Council of the Ports of P.R. ILA, AFL–CIO, (herein called Local 1575), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) (ii), subparagraph (B) of the Act.

3. The aforesaid charges were referred to petitioner as Acting Regional Director of the Twenty-Fourth Region of the Board. Said Acting Regional Director issued an Order, pursuant to Section 102.33(b) of the National Labor Relations Act's Rules and Regulations, Series 8, as amended, consolidating said charges.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents Local 333 and Local 1575, unincorporated associations, are organizations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

(b) Respondents Local 333 and Local 1575 maintain their principal offices at 608 Monserrate St., Stop 15, Santurce, P.R. and Covadonga No. 30, Puerta de Tierra, P.R., respectively, and at all times material herein said respondents have been engaged within this judicial district in transacting business and in promoting and protecting the interests of their respective employee members.

(c) Puerto Rico Lighterage Co. (herein called Lighterage) is engaged in the Commonwealth of Puerto Rico in the business of providing tug boat docking and undocking services to shipping com-

panies operating at the ports of Puerto Rico, including the port of San Juan. In the operation of its business, Lighterage annually receives a gross revenue in excess of $80,000 from tug boat docking and undocking services rendered to Sea-Land.

(d) Sea-Land is a Delaware corporation engaged in the business of transporting cargo by ship between the States of the United States and the Commonwealth of Puerto Rico, from which operations it derives an annual revenue in excess of $1,000,000.

(e) Lighterage and Sea-Land are now, and have been at all times material herein, employers engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

(f) Since on or about September 26, 1963, Respondent Local 333 has been engaged in a labor dispute with Lighterage concerning the personnel used by it to operate its tug boats for the docking and undocking of vessels of shipping companies operating at the ports of the Commonwealth of Puerto Rico. The Respondent Local 333 has demanded and is demanding that Lighterage use members of its labor organization to operate said tug boats.

(g) Respondent Local 333 is not the currently certified or recognized representative of any employees of the Sea-Land or Lighterage and there has been at any time material herein no labor dispute between said labor organization and Sea-Land. Respondent Local 1575 has a collective bargaining agreement with Sea-Land covering the stevedores and warehouse workers employed at Sea-Land's dock terminal facilities located at Puerto Nuevo, Puerto Rico. At all times material herein Sea-Land has not had and at present does not have any labor dispute with said Respondent Local 1575.

(h) In furtherance of the demand of Local 333 upon Lighterage that it use members of its labor organization to operate said company's tug boats at the ports of Puerto Rico, respondents Local 333 and Local 1575 entered into an arrangement or understanding that they act in concert to prevent Sea-Land from using the tug boat services of Lighterage while Lighterage is failing or refusing to operate its tug boats with members of Local 333.

(i) In furtherance of its labor dispute with Lighterage, and particularly in support of its demands that said company employ its members and recognize it as the bargaining agent of the employees operating said tug boats, Local 333 picketed the premises of Sea-Land on various dates between October 8 and November 19 inclusive, utilizing picket signs indicating that said company was using Lighterage tug boats operated by non-members of Local 333 to dock and undock vessels of said company. In conjunction with the aforesaid picketing and in furtherance of the aforesaid demands made by Local 333 upon Lighterage, Local 1575 engaged in strike action against said Sea-Land and it ordered, instructed and requested its members who are employed by said Sea-Land stevedores to engage in work stoppages on ships they were unloading, and also it instructed them not to report for shape-ups at the Sea-Land terminal for the unloading and loading of other ships arriving at said terminal.

(j) As a result of the acts and conduct of the Respondents Local 333 and Local 1575 described above, stevedore employees of Sea-Land engaged in work stoppages on ships they were unloading or assigned to unload, and further, they refused to report for shape-up for the unloading and loading of other ships which arrived at the piers of said Sea-Land.

(k) By the aforesaid acts and conduct Respondents Local 333 and Local 1575 engaged in joint strike action against Sea-Land and induced and encouraged individuals employed by Sea-Land to engage in a strike or refusals in the course of their employment to use, process, transport, or otherwise handle or work on goods, articles, materials or commodities, to perform services and they have threatened, coerced, restrained, and are

threatening, coercing and restraining said Sea-Land.

(l) An object of the acts and conduct of the Respondents Local 333 and Local 1575 set forth above in subparagraph (h), (i), (j) and (k) of Finding #4 has been and is to force or require Sea-Land to cease using, handling, transporting, or otherwise dealing in the services or products of Lighterage and to otherwise cease doing business with Lighterage, and more particularly to compel Sea-Land to cease using the tug boat services of Lighterage to dock and undock its vessels.

(m) The acts and conduct of the Respondents set forth in Finding #4(h), (i), (j), (k) and (l) above, occurring in connection with the operations of Sea-Land, have a close, intimate and substantial relation to trade, traffic and commerce among the several states and tend to lead to and do lead to labor disputes, burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, respondents will continue and repeat the acts and conduct set forth in Finding #4(h), (i), (j), (k) and (l) above, or similar or like acts and conduct.

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents Local 333 and Local 1575 are labor organizations within the meaning of Sections 2(5), 8(b), and 10(l) of the Act.

(b) Sea-Land and Lighterage are individually engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Respondents have engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) (ii), subparagraph (B) of the Act affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in Finding #4(h), (i), (j), (k) and (l) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past.